Last case of the day is United States v. Stango, No. 14-3510. I'm glad you found the right seat, Mr. Zosmer. Thank you very much, Your Honor. Robert Zosmer on behalf of the government. On those rare occasions that I'm the appellant before the argument, I always say to myself over and over, go to the right table, go to the right table. So I did it today. May it please the Court if I may reserve three minutes for rebuttal. That's granted. As Your Honors are aware, the government is appealing the sentence that was imposed in this case, a one-day sentence of imprisonment for a substantial amount of structuring and tax evasion that is both substantively and procedurally unreasonable. This is a case in which there are two decisions of this Court that are on point, the Kanunchak decision, of which Judge Barry was on the panel, in explaining that giving the sentence here for the reason the judge articulated, in order to assure that the defendant paid his restitution, was wrong. And then we have the Negroni decision, which makes clear that my friend's view from the other side, that what the judge was really doing here was varying on other grounds, is also procedurally unreasonable because the judge didn't explain it. Of course, it was a brilliant decision by Judge Jordan. Which I was about to say, of course, was written by Judge Barry. So let me throw out the first question to you. This force, may he apply in this case? It would. Well, it doesn't, because this sentence was imposed before July 16th. The government, in this case, did make the objection, which is still our primary objection, and thus, Flores-Mejia wouldn't be relevant, which was the objection to imposing the sentence based on his ability or nonability to pay. Okay. Now that's what I want to understand when you say you did make the objection. As I read the sentencing transcript, correct me if I'm wrong, the AUSA, Ms. Potts, makes an argument about, some argument about, you know, don't, well, she makes two arguments, as I understand it. One is he hasn't been cooperative, so he shouldn't be getting the benefit of acceptance of responsibility. And then she also makes some arguments about this is a classic guideline sentence. It's got to be right in the heartland of the guidelines. The sentence is imposed, one day, concurrent on all things. She asks a question, did I hear you right, is it one day? But there's no objection. Are you saying there was an objection in there someplace? Well, I'm saying that in that statement where she said that this is a guideline case, and it's cited in our brief, she says he has the ability to pay. That's not an issue. He did this serious crime. It should be a within-guideline sentence. Right. I believe that would preserve the objection. It's not an objection. She's taken a position, Mr. Zosmer, before sentence has been imposed. Sentence is imposed, and she doesn't say anything except, I want to be clear, you're saying one day. That's the only thing that comes after sentencing. So how can her stated position morph into an objection? Well, all I'm saying is that she stated the government's view on the rationale that the court then relied on. But I have to say that if this happened today, I expect any AUSA guided by Flores Mejia would make an objection right after sentence was imposed. The law of this court, as we know well, was different at the time that this sentence was imposed, and this court said that Flores Mejia therefore would not apply retroactively. All right. But certainly I would hope that today there would be an objection, and if there wasn't, we would be studying this a lot more carefully. And we've certainly instructed all of our assistants in accordance with Flores Mejia. The important thing here is the very last thing the judge says, as Your Honor mentions, which is the last statement the judge makes after explaining the sentence, is he simply says, Mr. Stango, just so I'm clear, the sentence I imposed was done for the purpose of making sure that you pay what you owe. That's unjustified on the record. It's unjustified as a matter of law, and that's the reason we ask to vacate the sentence. Now, can I ask you if the transcript cannot be fairly read as the district court at that point not saying this is the only reason why I'm giving this sentence, but the district court attempting to respond to the AUSA's earlier expressed concerns about a lack of cooperation from the defendant. In other words, as the district court goes through the sentencing factors, you hear Judge Savage saying you've got health problems, you're an older guy, I don't think they can handle the medication issues in BOP, run through a series of things. In short, is it really fair to say, as you emphasize in your brief and have right at the podium today, that the court was just looking at ability to pay restitution? Well, I think that's the fair reading of it. I mean, I'm just reading the language. The sentence I imposed was done for the purpose of making sure that you pay what you owe. I can see what Your Honor is saying, that one might have a different interpretation of that. I think you have to work hard to get a different interpretation. But if that's the case, we still have a procedurally unreasonable sentence here. Well, I think it's fair to say the district court considered a number of factors but found one determinant to correct. Definitely. And that's where, Your Honor, we have here a replay of Negroni. And I can't say it's a coincidence. I mean, as we all know, it's the same district judge in both cases. And you can lay out the sentencing explanation that's quoted at length in Negroni, lay it out and compare it side by side with the sentencing colloquy here, and it's identical. It's a recitation of different considerations without any explanation of which factors. So if I take Your Honor's suggestion as to how you might read this, then we're still squarely within Negroni. If the court is just adding making sure that you pay as one more consideration, along with health and age and all the other things that he mentioned, we're right squarely in Negroni where this court said, in a case involving such a substantial variance, it is not enough to note mitigating factors and then impose sentence. That's exactly what happened here if we take Your Honor's view. If we take my plea in reading, then it's equally bad, which is to say I'm imposing a sentence so you can pay restitution, which is what was faulted in Cononcha. Negroni talks about the difficulty of the court not looking at, in that instance we point to the need to consider unwarranted disparities. Is your argument here that the court didn't look at stuff or that it just looked at things and improperly gave too much weight to one thing? What's the district court's error that warrants us saying, under an abusive discretion standard, procedurally unsound? Well, the error is the same error as Negroni, that at best the court simply listed mitigating factors and then imposed a sentence without explaining the connection. And if that's not acceptable and where there's a substantial variance, it doesn't allow meaningful appellate review. They should look at his reasoning. At worst, it's what I said before, which is the sentence really was based squarely on an impermissible factor, which was this person's ability to pay restitution in the future. Can't you read what he's saying here to me? And he's express about it. This person is going to be 67 in a couple of weeks. There's no concern at all about recidivism. There are serious health issues. I had health and age issues. I just don't see any benefit at all to putting this guy in jail. There's no meaningful, retributive benefit to putting this person in jail, and in fact there are age and health issues that make it unsound to put this person in jail. Is that an individualized sentencing judgment that we need to defer to? Well, first of all, he didn't say that. Second, if he had, you would give a definite- Sure, he didn't say it quite the way I just said it, but can't it be understood from the way the court focuses at certain points on age and health? If that were the explanation and it were given in the same way, it's very likely we would appeal a one-day sentence as substantively unreasonable, that if you look at this record where he's a 67-year-old man, he has health issues, which seem, without much digger-deeping, to be ailments that people do have when they reach the age of 67. Well, is the court specific in saying, Mr. Zosmer, you've got some ailments which are not age-specific enough, and the implications are serious things, hearing and sight, things like that? There's actually no record to support that. The defendant had the burden on that and produced nothing other than his own statement. His own statement. Right, which didn't even support the judge's conclusion that it was different. So we have here an extreme variance. This court said in Negroni it hadn't seen a case in which you started from 70 to 87 months and had probation. There it even involved home confinement. And I can tell you we still haven't seen a case, other than this case, in which we have somebody who commits over a million dollars in tax evasion and is given a one-day sentence. That's substantively unreasonable. Now, when we approach it that way, would you say that it's always, is the government's position that if you've got a million dollars in tax evasion, it's so facto that it's going to be a substantively unreasonable one-day sentence, no matter what the circumstances? No, we've never said that, and that wouldn't be consistent with this law or the Supreme Court's precedent. We have to look at each case, but we see the mitigating factors that were put forward here, and they're not sufficient. And what I want to add is that in Negroni, we did look at it. If you go back and look at the government's briefing, we went straight to substantive reasonableness there. It was the same thing. It was 70 to 87 months. It was a probationary sentence. And this court set us straight. This court said, no, this is procedural error because there's no explanation given of what the link is between these factors and the final sentence, and that we can't have meaningful appellate review until we know exactly what's on the judge's mind. Well, that's what Gall calls for, right? That's right. I mean, Gall lists it as procedural error to not give an adequate explanation. That's right, and so that's why I'm necessarily relying on Negroni and saying that it's the exact same situation here. Here it's worse because here we not only have a failure to link the mitigating factors to explain how it justifies the sentence, but we have specific reliance on one improper factor, whether it's the entire reliance or partial reliance. What we're urging this court to do in vacating the sentence is explain that part of the reasoning can't be that you're getting a lesser jail term so that you can pay restitution when you've already told the court you have no future earning ability and it's all coming from preexisting assets. Now, how do we guard ourselves from, let me preface this by saying, Gall is pretty clear in saying that an inadequate justification, an inadequate explanation, is a procedural error. Our own case law, Levinson, said that before Negroni as well. But how do we guard ourselves from not, under the guise of procedural unreasonableness, just reexamining the factors and reweighing them ourselves and saying we disagree? In other words, that line between procedural and substantive review might not be as clear as we'd like it to be sometimes. How do we know we're on the right side of that? Well, it's a tough line, but I think that Your Honor's opinion in Negroni was carefully written in it and it provides a clear guide for this case as to where the substantive error is and where the procedural error is. So where does Negroni tell us that line is so that we'll know that we're not just doing a reweighing here? The first thing that Negroni requires, and this is procedural, is that the court explain its sentence and that where it gives a substantial variance, it gives a substantial justification and explain its reasoning. That allows appellate review. Under Booker, this court is not irrelevant. It will defer to the lower court, but it won't just rubber stamp. Once you have that explanation, then you do engage in substantive review. And in the ordinary case, you're probably going to say this is within the district court's wide discretion. That's why the government takes virtually no sentencing appeals, even though there are many variances in the district court, because this court will defer. But there will be those cases, and this is one of them with regard to the restitution error, where once we get to substantive review, this court says no. Even with a deferential standard, this is not something that a reasonable court would do. When you say restitution error, you mean the error of focusing on capacity to make restitution. There's nothing – government doesn't have any issue with the way the restitution itself was ordered here, right? Oh, no, not at all. In fact, restitution is a required factor to consider that. You're right. It's the way it was considered as a reason for a lower sentence of imprisonment in order to assure his ability to pay, which didn't rely at all on him being out of custody. Now, when you filed your brief in November of 2014, Mr. Stango had paid $244,000 in restitution. Has there been any restitution paid subsequent? He's been paid $500 a month in recent months. And so now it's only up to $246,000, which is exactly $200,000 short of the total. There's also a forfeiture judgment that hasn't been paid. If I could just say one last thing, which is just one more focus on Negroni, is Negroni says when you're giving a variance like this, one of the things you also have to explain is how you're not creating a disparity and how you're not missing the purpose of deterrence. And that's really strong here. General deterrence is very significant in a tax case. The sentencing commission itself says that. This court and other courts have said it. And the court gave no explanation of that either. That's what's needed here. And then maybe we're back another time. I hope not. But that's the time at which there can be appellate review. All right. Thank you, counsel. Good afternoon. If you may, please, the court. Brendan McGuigan on behalf of the appellee, Leonard Stango. Let me start by saying we disagree. We do not believe that there was any abuse of discretion, which I think is the crux of why we're here. The government is asserting that the district court abused discretion both procedurally and substantively, and we disagree on both counts. We believe that the court gave a very well-reasoned explanation as to each factor it made in its determination of the sentence and why it was given. But you have to admit, I mean, the primary basis appears to be this restitution issue, right? I disagree. I disagree. I believe that the court gave a long recitation of all of the different factors, especially concentrating, in our opinion, on the medical factors. He went very specifically into all the different medical problems that Mr. Stango has. He said that that wouldn't prevent imprisonment. He said it would be difficult but not impossible. That's right. Not many things are impossible. However, the degree of difficulty in dealing with the magnitude and the number of health issues that Mr. Stango was dealing with is highly prohibitive. We have no medical reports. It's really Mrs. Ellsmer explained that before. We have the defendant say so, and we have probation having watched him walk up the stairs with difficulty. That's not all. And even in the government's brief, the probation department did a thorough examination. They called doctors. They spoke to doctors to determine if Mr. Stango was because I'm sure the probation department is faced all the time with people not being truthful about medical issues. There's no medical expert report here, right? There was no medical expert report. And the judge denied a downward departure on medical and age grounds. He did, and I actually disagree with that, but I think it was done with a variance because it was a major, major factor. Perhaps it didn't fit the departure guidelines, but it certainly would with the variance and his determination. And don't forget, Judge Savage had the ability, unlike this court, to see Mr. Stango. He was able to see that these factors or these medical issues that were being brought up by the probation department as well. And, again, I've dealt with the probation officer in question many times. He's not some pushover probation officer who's just going to believe what anybody says. He spoke to Mr. Stango's doctors. He confirmed the eyesight issues with the glaucoma. He confirmed issues with fractured knees. He confirmed issues with the vertebrae. And if we take all those things as true, isn't it? And one also gets the sense or is cited that Judge Savage perhaps quite rightly felt some sympathy and respect for a sort of an up-by-your-bootstraps fellow and with no meaningful criminal record at all, not a serious, you know, RICO kind of drug dealer, gambler kind of guy. I mean, he makes those things clear, reasonably clear in the sentencing transcript. But how does that help you get away from controlling law in this circuit like Negroni, which says in a case involving a substantial variance, it's not enough to note mitigating factors in imposed sentence. Rather, the chain of reasoning must be complete, explaining how the mitigating factors warrant the sentence. I believe the court did that. I believe that his in-depth… The only place where you can see the court says, here's the reason for giving you one day, is at the end where the court says that you will pay this restitution. Otherwise, can you point me in the sentencing transcript where there's a chain of reasoning justifying one day? There was not a chain of reasoning in the language that would be most beneficial to the court looking at it. However, I think in the totality of the circumstances, you look at the reasoning, and this was a lengthy sentencing procedure. It wasn't like it was a two-minute procedure. During the whole examination, or I should say during the whole hearing, everything was put… How about, Mr. McQueen, the point that was made specifically in Negroni about if you're going to, in a white-collar crime like this involving, in this case, tax evasion, you're going to… You're going to give an enormous variance, then you've got to have some explanation for how this deals with general deterrence. That seems to be something that you're supposed to consider as a 3553A factor, but especially supposed to consider if you're going to have a gigantic variance. I understand. I think the part where Judge Savage specifically mentioned that the general deterrence of that you're either going to be jailed or lose a substantial amount of money is general deterrence. I especially think so in this case. He mentions deterrence once, and I went out of my way to do a word search on the transcript, and it comes up once in the district court's comments, and it's a pretty quick hit and off, and there's no discussion of sentencing disparities. Well, I think the sentencing disparities were taken care of in the fact that Judge Savage, it's our belief that his intent was to show that because Mr. Stangl was not in the same position as the other white-collar cases that the government relies on in terms of… Well, they don't specifically mention anything about drug lords, but Judge Savage specifically says he's not a drug lord who's seeking to bypass money here and send it to a foreign nation. That can't be it, right? Because wait, this wasn't a drug case. Let me say it was a drug case, so that can't be the basis on which to say this. But making comparisons about other white-collar criminals or white-collar cases, Mr. Stangl doesn't meet the classic white-collar case. If you look at the cases the government cited or relied on specifically, all these were high-end cases. They were well-educated defendants. They were highly sophisticated operations. They needed more than mere simple planning. Nothing could be more simple in Mr. Stangl's case than a bookmaker who was foolish enough to accept checks from one person and then make distributions out of that. I mean, this is not a person who was educated in the white-collar sense or who was doing anything. And there was no loss in the billions of dollars. The structural proceeds were $2.5 million. I mean, this… Well, what it was was the overwhelming majority of the money came from one better, who Mr. Stangl came into contact with when he was 62 years old. And this person lost… But these are things that you're saying, right? I've said… We've got to review what the district court's reasoning was. Where can you point us to in the district court's reasoning for where the district court says, you know, I recognize that the guideline range here is in excess of five years and up. I don't care what the top of the range was. Let's say five to six and a half or seven years, something like that. I'm giving you one day. And here are all the reasons why, under 3553A, this is an okay thing for me to do. Because it's clearly a very substantial variance. And it's justified on these bases. Where does the court do that? Well, I think that the court does not specifically do it in a language that would satisfy the circuit court. However, I believe in the totality of circumstances in the way he fashioned the statement after the lengthy discussions of every single one of the 3553A factors. After Levinson and Negroni, can we just give a pass to something like this? Or aren't we bound to say to the district court, you know, these are the bases you've got to touch. If you're going to give a variance on this scale, you've got to go around all the bases and touch them all and then show us you did in order for us to say, okay, the procedural aspect's been met per gaul, adequate explanation. And then we can do a subset reasonableness analysis. Again, I base it on the totality of circumstances and that Judge Savage. I know you said in your brief at 9 that case law shouldn't control here. Well, we're not in the wild, wild west. We do have rules and we have cases. And we have to totality the circumstances isn't really the test that we apply. I understand. However, again, based on the individualized sentencing that I believe must occur on here, I think it did take into account those issues. Well, Judge Jordan was asking some of the earlier questions. He, I recall the good old days. I went in the district court in 74. I mean, that's exactly when you could, you know, do this and you could look at everything and you can say, oh, well, he is aged. He's 66. Middle aged. Yes. But that's better. That's better. But you could do that and you could look at the individualized sentencing without having to worry about all of the things that came in with the sentencing guidelines. Well, again. And cases like Negroni. Would it have been easier to make the determination if the specific language was used? Yes, but I believe that Judge Savage did meet all of those requirements, albeit not in language that the government or the court, this court would have preferred. I think that. Excuse me. My age is showing. I went to district court in 83. I'm not that old. I understand. But, again, it's not in language that this court would prefer. However, I do think that he met the burden of meeting all those factors with the substantial way that Judge Savage went into all of the mitigating factors in the 3553 factors. Again, so I think we need to. He went into them. One of our points is he may have listed them, but you've got to weigh them, right, or at least consider them. Well, I think he very well considered, especially the medical. He did list them, but I think with the way they were listed, I don't know what more he could have done in terms of, you know, did he need to stand up and shout out what his medical issues were. He clearly put them on the record. He relied on a pre-sentence report for what the medical problems were, which, again, had no objection from the government as to the pre-sentence report listing what the medical problems of Mr. Savage, excuse me, Mr. Stangel were in relation to the probation department's view of that and speaking to the doctors. So if that was really on his mind, why didn't he just grant the motion for downward departure? I don't know. Okay. And he didn't give reasons for it either, denied it. For the denial of a downward departure?  Not specifically on the record, I saw. No, he didn't. No. Okay. Now, again, once we get past it, we believe we have made it past the procedural error issue, then it goes to the substantive error. We, again, don't believe that there was any substantive error in this matter. Again, understanding that it was a very, very large variance, a leading sentence, as the government has called it. I would call it a merciful sentence. If you change this sentence based on what research said, if you remand it back for further review, what you're saying is you're effectively taking the issue of sentencing away from the district court and bringing it here because I think the district court judge was the most able to analyze Mr. Stangel. I'm not so sure that that's the case. If we set it back and tell them, support your conclusions with some analysis, Negroni, right? And I believe the government is very clear, both in their brief and in their argument, that anything other than a guideline jail sentence would be appealed. Well, but you're assuming that, and I understand you want to move on and talk about sentences. I do, very much so. But it's certainly within the purview of this court to say we have a procedural reasonableness problem here, and if we determine there is a procedural reasonableness problem, our case law tells us, in general, that's where we stop, right? We don't get into the substantive reasonableness. We send it back to the district court and tell them we have a procedural problem here, fix it, and we won't even think about the substantive reasonableness, would we? If we thought there was a procedural reasonableness problem. You were not, which was why, in my belief, once it gets to this point and we are actually speaking about the procedural, I think that's already been met, because otherwise what is the reason for bringing it here? If there is a procedural issue, and the court is very clear that if there's procedural error, we don't even get anywhere past that, it immediately gets remanded back. That could have been done on the briefs alone, but here in the argument, there had to be some question in the court's mind as to whether or not this was actually procedural. Now you're in dangerous ground trying to fathom what the heck we were thinking when we called the case for argument, but it could be that we wanted to explore with you some of the ramifications of Levinson and McGrowney and Gall and try to understand are we talking about a procedural reasonableness problem here? I do not believe we are. Again, for the reasons stated, I think that judicial intent and sentencing intent does matter, and I think his intent is clear. I think that to state that while he has to say it in the language that most pleases the circuit court is not valid. I think it was very clear, Judge Savage made it very clear as to why he was giving the sentence he gave. He listed those factors, and he went into them in great detail. The fact that Mr. Stango was a non-discharge veteran of the National Guard. The fact that he had no prior criminal history. The fact that he was talking about cases that he was contrasting that to, or people in that position as a drug lord. There's some things you can definitely say in favor of your client, but there's also a question of promoting respect for the law and adequate deterrence and avoiding unwanted sentencing disparities. These are things that needed, under Negroni it looks like they needed some explanation or some discussion as a procedural matter, but getting past that, how would you address a one-day sentence on the substance in light of those factors? Well, I'm glad we're getting to that. Because if you go to what the cases are cited by the government, the ones that they most rely on, as I said earlier, those cases all involve grand schemes. Two of them are the same over-a-billion-dollar fraud, HealthSouth. One was a CPA, and court said did impermissible things on the CPA case, which I think was Coulard, in which case it based its sentencing on impermissible factors such as, well, he's going to lose his CPA license, or he's already paid a lot of leaver bills. That's where the individualized sentencing comes in in the case of Mr. Stango. Mr. Stango, again, he's not the classic white-collar criminal. Yes, the crimes that he committed would technically be considered white-collar, but he was a street-level criminal. That's what this man was. He wasn't running a billion-dollar Vegas operation or Nevada operation. He regretted the day his whale swam. That is exactly right, because that is exactly what happened. Again, I know this is just me speaking, but I spoke about it a little bit at sentencing, and the person to whom Mr. Stango had to go to in order to lay off that money. So he's not these people who are well-educated, people involved in a scheme or a scam that costs taxpayers billions upon billions of dollars, or stockholders, or employees at their job, as the case of HealthSouth. He didn't make false entries into ledgers to falsely indicate assets that weren't there in order to pump the stock up, and then when it's found out, it goes down to 11 cents. So he is different in that regard. So therefore, even the people who got the one-day sentences, Mr. Stango was substantially different. The government relies heavily on conduct, Chuck. This is a person who was 29 years old. He involved a minor in his crimes. Again, well-educated, a grand scheme that was very hard. Mr. Stango would not have been able to pull off a scheme like this. And that court impermissibly spoke almost exclusively to the financial aspect. Here, Judge Savage didn't do that. He spoke of the financial aspect, there's no doubt. But again, I think the government's wrong, and the court was on to the right aspect when he said this was after the sentencing. He said it to him to make sure he stayed on the straight and narrow, because he also said after Judge Savage stated that, I'm doing this for the purpose of you paying it back, he stated, if you don't cooperate with the IRS, and I believe in firing with the sentence that was passed out, I will mete out a different sentence. Counsel, your time's up. If you want to sum up. I will sum up. We believe that there was no abuse of discretion, either procedurally or substantively, and we believe that this decision and sentence should stand. Thank you. Thank you, Counsel. Just very quickly, Your Honor, I think that we cite those other cases for a simple proposition, which is that white-collar fraud can be deterred, and therefore deterrence is an important sentencing factor. We're not comparing to the facts of those cases. Comparing this case to HealthSouth, it is unhelpful as the district court comparing this to a drug kingpin. The guidelines in those cases are very, very different. Here we have a guideline squarely based on structuring and tax evasion and a massive variance. We're not just here for a formalism, is the last thing I'd say, is asking courts to dot highs and cross Ts, where we have a clear violation of Negroni asking that the court comply. We think that this court, if it's an experienced judge, may well likely reach a different sentence when focused by this court on the precedent of this court, which is, number one, you can't base the lenience on repayment of restitution in the case in which the person says he has no future earning capacity. What would you have the court do? Vacate remand on procedural error grounds like in Resed and other things and not even consider substantive reasonableness? Well, no, we also ask this court to consider the restitution factor. We don't see any reason to go back and have that set again and then it's squarely before the court. So we would appreciate a ruling with regard to that rationale and then reinforcement of the Negroni requirement. And we think that when this district judge complies with that, he may well reach a different sentence, which would be more appropriate, not to just say you evaded all these taxes, pay it back. We can do that in a civil case. That's not the purpose of criminal prosecution. Thank you very much. Thank you, counsel. We'll take the case under advisement. The clerk will adjourn court, and if we can meet counsel outside for a review, we'd appreciate it. Court is adjourned until Monday, April 27th at 11 a.m.